UNITED STATES

v.

**Sergeant Patricha F. MILLER, FR 247–21–6847, United States Air Force.**

**ACM 27958 (f rev).**

U.S. Air Force Court of Military Review.

Sentence Adjudged 20 March 1989.

Decided 11 Oct. 1990.

Appellate Counsel for the appellant: Colonel Richard F. O'Hair and Captain Ronald A. Gregory.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Colonel Robert E. Giovagnoni; Major Terry M. Petrie; Major Paul H. Blackwell, Jr.; Captain Leonard R. Rippey and Captain Morris D. Davis.

Before LEONARD, RIVES and McLAUTHLIN, Appellate Military Judges.

## DECISION UPON FURTHER REVIEW

LEONARD, Senior Judge:

Appellant asserts that her court-martial lacked jurisdiction because of a defective preferral of charges. She was convicted of nine bad check offenses and sentenced to a bad conduct discharge and reduction to airman basic. The convening authority approved the sentence, but suspended the punitive discharge. We find no merit in appellant's assertion of error.

Appellant contends that her commander falsely swore the charges he preferred against her were true. She further maintains that the staff judge advocate violated R.C.M. 307 by coercing her commander into preferring charges when the commander did not believe that she was guilty of the charges.

### I

The basis for appellant's allegation of error came to light when her commander testified in a subsequent court-martial concerning a command influence issue. During his testimony, he stated that he did not believe that appellant was guilty of the charges when he preferred them. He testified that he preferred appellant's charges only because the staff judge advocate told him that, if he did not, a higher authority would do so.

When this case was originally presented to us, a transcript of the commander's testimony in that later case was attached to appellant's brief. After reviewing that testimony, we determined that an issue of improper referral was raised. Since appellant's record did not contain adequate facts to properly resolve this issue, we ordered a limited evidentiary hearing to obtain the necessary facts. *United States v. DuBay*, 37 C.M.R. 411 (C.M.A.1967).

During the *DuBay* hearing, the parties did an excellent job of developing the evidence on all aspects of the issue. The military judge and counsel should be commended for their professionalism. The evidence presented during the hearing is summarized in the following paragraphs.

The commander who preferred appellant's charges was an acting commander who held the position for only 25 days. At the time he preferred appellant's charges, he had been commander for only four days. He had never preferred charges before and had never been present when a commander had preferred charges. On the 21 December 1988, he was called to the staff judge advocate's office to prefer appellant's charges. The staff judge advocate testified she was aware of the commander's limited experience, but was not "shopping for a commander" and did not take advantage of his inexperience.[1]

---

1. We note that all the offenses charged against appellant were committed in March and April of 1988 and the Air Force Office of Special Investigations completed their investigation of

Appellant's commander testified that he had some reservations about preferring appellant's charges. He knew appellant personally, was aware of her outstanding duty performance, and considered her to be an honest person. He was concerned about the nature of the offenses and the level of disciplinary response he was being urged to take. He initially felt nonjudicial punishment or some other lower level disciplinary action might be appropriate. He felt appellant might have been singled out as an example in response to a bad check problem on the base. He was aware of this problem because Colonel Kitchens, the Air Base Group Commander, had mentioned it a number of times at his staff meetings. Finally he had some reservations about appellant's guilt. In particular, he knew some of the background concerning the charged offenses and doubted whether appellant had intended to defraud or to commit a criminal offense.

Appellant's commander told the staff judge advocate about his lack of knowledge of the offenses and his concern about her guilt. In response to the commander's concerns about the offenses, the staff judge advocate provided the investigative reports and explained the elements of proof of the offenses and the concept of "intent to defraud." After reviewing the file and discussing it with his first sergeant, the commander asked the staff judge advocate what would happen if he did not prefer the charges. She informed him that if he did not sign the charges, another officer would sign them. The commander interpreted this to mean that Colonel Kitchens would prefer the charges.

Although the commander still had some reservations about appellant's guilt, he did not restate his doubts, but took the oath of preferral and signed the charges.[2] According to his testimony, he did the preferral believing he had no choice because it was his duty as commander and the charges would be preferred by someone else if he did not do it. If the charges were to proceed, he felt he should initiate them rather than having the appellant appear before a more senior officer who did not know her. He also thought that any remaining questions about guilt would be resolved at trial. In response to a question by the staff judge advocate, he stated that he was acting of his independent will and was not being ordered or coerced to prefer the charges. That same day the commander also signed a transmittal of court-martial charges recommending trial by general court-martial.

On 22 December 1988, the commander returned to the staff judge advocate's office to prefer an additional charge against appellant. There is no adequate explanation of why all the charges could not have been preferred together on 21 December. During this second preferral, the commander did not express any reservations about appellant's guilt or preferring the charges. He later expressed reservations about both preferrals to the appellant, the commander who replaced him, and other members of his unit.

Considering all the evidence, the military judge found that appellant's commander did not believe appellant was guilty of the charges at the time he preferred them; however, the commander was not coerced or forced by anyone to take the preferral oath or sign appellant's charges.

Before and during appellant's court-martial, her defense counsel had investigated possible command influence issues involving her case. Their primary concern was

these offenses in August 1988. We also note that the staff judge advocate testified that she had disagreements with appellant's previous commanders over the disposition of appellant's offenses.

2. The oath of preferral on appellant's charge sheet (Department of Defense Form 458) was as follows:

AFFIDAVIT: Before me, the undersigned, authorized by law to administer oaths in cases of this character, personally appeared the above named accuser this 21st day of December 1988, and signed the foregoing charges and specifications under oath that he/she is a person subject of the Uniform Code of Military Justice and that he/she either has personal knowledge of or has investigated the matters set forth therein and that the same are true to the best of his/her knowledge and belief.

the possibility that Colonel Kitchen's comments at air base group staff meetings had improperly influenced the commander or prospective court members. They were also generally aware of the preferring commander's concerns about appellant's court-martial and his support for her. Because of this support, they used him as a favorable character witness during her trial. However, they did not become specifically aware of a possible preferral defect until after appellant's trial.

The military judge found that appellant's defense counsel were not specifically aware before or during appellant's trial that there was a possible defect in appellant's preferral process.

## II

■ R.C.M. 307(b) provides that the person who prefers court-martial charges must sign the charges under an oath that states:

> [T]he signer has personal knowledge of or has investigated the matters set forth in the charges and specifications and that they are true in fact to the best of that person's knowledge and belief.

No person may be ordered to prefer charges to which he is unable truthfully to take the required oath. R.C.M. 307(a) Discussion. No accused should be tried on unsworn charges over his objection. *Frage v. Moriarty*, 27 M.J. 341 (C.M.A.1988); *United States v. Goodman*, 31 C.M.R. 397 (N.B.R.1961); *United States v. Bolton*, 3 C.M.R. 374 (A.B.R.1951), *pet. denied*, 3 C.M.R. 150 (C.M.A.1952). If a commander is coerced into preferring charges that he does not believe are true, the charges may be considered unsigned and unsworn. *Bolton*, 3 C.M.R. at 379. Trial of an accused upon unsigned or unsworn charges is a procedural error which can be waived by failure to object at trial. *Moriarty*, 27 M.J. at 343; *Bolton*, 3 C.M.R. at 379. If the accuser was not coerced into preferring charges, some Board of Review decisions have held the facts that the accuser was not sworn and did not believe the charges were true does not invalidate the subsequent court-martial. *See United States v.*

*Johnson*, 72 B.R. 317 (1947) and the cases cited therein.

In appellant's case, we do not find waiver of the asserted defect in preferral by appellant's failure to raise the issue at trial. The facts show, and the military judge specifically found, that her defense counsel were unaware of the possible defect until sometime after the completion of her trial. Therefore, similar to an issue of unlawful command influence discovered after a trial is concluded, we hold that a defective preferral discovered after trial may be asserted for the first time on appeal. *United States v. Madril*, 26 M.J. 87 (C.M.A.1988) (summary disposition).

To resolve the issue, it is helpful to review the history and the purpose of an accuser taking an oath stating that "the matters set forth in the charges and specifications ... are true ... to the best that person's knowledge and belief."

The basis for the requirement under current law is Article 30(a)(2), UCMJ, 10 U.S.C. § 830(a)(2) and R.C.M. 307(b). According to the Drafters Analysis for the Manual for Courts–Martial 1984, the requirement is similar in purpose to Federal Rule of Criminal Procedure 7(c)(1) which requires an indictment or information to be signed by the attorney for the government. MCM, App. 21, Rule 307(b) (1984). The concept is one of requiring accountability for bringing allegations to trial. *Id.*

The requirement that charges be sworn to by the accuser originated in Article of War 70, Army Reorganization Act of June 4, 1920 and has been included in Manuals for Courts–Martial since 1921.

Originally, the applicable provisions provided:

> No officer or other person can prefer charges unless he is able to make the required oath on his own responsibility that he has personal knowledge of, or has investigated the matters set forth therein, and that the same are true to the best of his knowledge and belief.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> [Charges] will be preferred only when the person preferring them either has

personal knowledge of, or has investigated, the matters set forth therein, and from such knowledge or investigation is of the opinion that there is reasonable ground for believing that an offense has been committed, that the accused is guilty of the offense, and that the offense can not be properly or adequately dealt with in any other manner.

MCM, para. 64, 75 (1921).

The wording has changed slightly over the years. The 1928 and 1949 versions provided for an exception to sworn charges if:

[T]he person signing them believes the accused to be innocent, but deems trial advisable in the interest of the service as well as for the protection of the accused ... In no case, however, should an accused be tried on unsworn charges over his objection.

MCM, U.S. Air Forces, para. 31 (1949); MCM, U.S. Army para. 31 (1928).

The 1951 and 1969 Manuals for Courts–Martial provided:

A person subject to the code cannot be ordered to prefer charges to which he is unable truthfully to make the required oath on his own responsibility.

MCM, para. 29 c, (1969 Rev.); MCM, para. 29 c (1951).

Winthrop in his treatise on *Military Law and Precedents* stated that a charge is "officially authenticated and preferred by the formal subscription of the same by the preferring officer with his name, rank, regiment, corps, or office." Winthrop, *Military Law and Precedents* 154 (2d ed. 1920 reprint). He further noted that:

Commanding officers, in forwarding charges, may well be, and have sometimes been, required in Orders to certify that they have fully investigated the case, and believe that the charge can be fully established.

Winthrop, footnote 18, page 151.

According to Winthrop, the purpose of the formality in preferring charges was to insure the charges were not frivolous unfounded, or malicious, but were substantial and in good faith. Winthrop, page 151.

*See also United States v. Westergren,* 14 C.M.R. 560 (A.F.B.R.1953).

### III

■ With the wording of the oath and its purposes in mind, we do not find appellant's preferral defective. First, we do not find that the commander's reservations about appellant's guilt invalidated the preferral. Taking into account his reservations, the commander properly decided to leave the ultimate question of guilt or innocence to a court-martial. *Westergren,* 14 C.M.R. at 585; *Johnson,* 72 B.R. at 340. The oath an accuser swears is that the charges "are true to the best of his/her knowledge and belief." We hold, to maintain the validity of the purposes of this oath, an accuser need only generally believe that the allegations contained in the charges are true at the time they are preferred. It is not necessary that the accuser be convinced beyond a reasonable doubt of the accused's guilt of every legal element of the specifications of the charges.

Appellant's commander reviewed the evidence supporting the charges, discussed the evidence and the charges with his first sergeant, and discussed the evidence and the elements of proof with the staff judge advocate. After doing all of this, his only concern was whether the evidence, under appellant's particular circumstances, would be sufficient to establish the required intent to defraud. There is no evidence that appellant's charges were frivolous, unfounded, or malicious. Further, there is no evidence that appellant's commander considered the basic allegations of fact contained in the specifications of the charges to be untrue. Therefore, we find that appellant's commander possessed the knowledge and belief necessary to take the required oath at the time he preferred her court-martial charges.

■ Second, we agree with the military judges's finding that appellant's commander was not coerced or forced into preferring the charges or making a false oath. The commander specifically responded to the staff judge advocate that he was preferring the charges on his independent will

and was not being ordered or coerced to do so. He could not specifically recall taking the oath during the preferral, but acknowledged that he probably did so. According to his testimony, he did the preferral because it was his duty as the acting commander. He did not feel that he was being ordered to do so and he did not feel that the staff judge advocate, who was senior in grade, had "pulled rank" on him.

## IV

Although we find no prejudicial error, we are concerned with the overall impression given by a number of events occurring during the pretrial portion of appellant's case. These events, some of which were unrelated to others, combined to bring this case dangerously close to a defective preferral or improper command influence. Some of the events which concern us are listed below.

During the time appellant's bad check offenses were being investigated, the air base group commander made a number of comments at his staff meetings about the seriousness of the bad check problem. According to appellant's commander's testimony, these comments even stressed the need to make someone an example by obtaining a conviction. These comments concerned appellant's commander because he knew appellant's case was under investigation. The comments also became the basis of extensive *voir dire* of each court member by the defense.

Investigation of appellant's offenses was completed in August of 1988, but preferral of her charges was delayed until late December after the regular commander had been reassigned. The preferral was requested of an inexperienced acting commander who had been commander for only four days and who would be commander for only 25 days before a new commander arrived.

The preferral appeared to be hastily arranged or not well planned. One charge with eight specifications was preferred four days before Christmas and the commander had to be called back the next day

to prefer an additional charge with another two specifications.

The preferring commander had reservations about his preferral and felt himself subjected to pressure to prefer charges in order to avoid having a higher level commander involved in the preferral. Although he may not have fully explained his reservations to the staff judge advocate, he did express negative feelings about the preferral to various personnel in his unit, including the new commander and the appellant.

We caution those involved in providing advice to commanders, preparing charges, and preferring charges to avoid these types of circumstances. Whenever such circumstances occur, there is an unfortunate impression of unfairness and the possibility of unnecessary litigation at both the trial and appellate level. Although we found no unlawful command influence in this case, similar fact situations have reached that level in other cases. *See* Article 37(a), UCMJ, 10 U.S.C. § 837(a); *United States v. Kitts*, 23 M.J. 105 (C.M.A.1986); *United States v. Thomas*, 22 M.J. 388 (C.M.A. 1986); *United States v. Accordino*, 20 M.J. 102 (C.M.A.1985); *United States v. Hardy*, 4 M.J. 20 (C.M.A.1977); R.C.M. 104(a); R.C.M. 306(a) and (b); Air Force Regulation 111-1, *Military Justice Guide*, paragraph 1-1 (March 1990).

We have examined the record of trial, the assignment of errors, and the government's reply and have concluded that the findings and sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the substantial rights of the accused was committed. Accordingly, the findings of guilty and sentence are

AFFIRMED.

Judges RIVES and McLAUTHLIN concur.